Filed 12/13/22 In re Coles CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re | F079172 |
| JAMEEL COLES | (Super. Ct. SUF23393A) |
| On Habeas Corpus. | |

## THE COURT[*]

APPEAL from the judgment of the Superior Court of Merced County. Mark V. Bacciarini, Judge.

Stephen Greenberg, under appointment by the Court of Appeal, for Petitioner.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe, Deputy Attorneys General, for Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Detjen, J. and Peña, J.

# INTRODUCTION

Petitioner Jameel Coles petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for first degree murder (§ 187). The superior court denied the petition at the prima facie stage, without appointing counsel, on the ground that petitioner was either the actual killer, aided and abetted in the murder with intent to kill, or was a major participant in the underlying felony and acted with reckless indifference to human life.

On appeal, petitioner argues the superior court erred in failing to appoint counsel and permit adequate briefing, in ruling without consideration of an adequate record, and ultimately in denying the petition at the prima facie stage. He contends the jury's true findings on multiple special circumstances, all of which required the jury to find he was

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 recently was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We will refer to the current section 1172.6 in this opinion.

Petitioner filed his resentencing petition on a form petition for writ of habeas corpus, but made clear he was seeking relief pursuant to the procedure outlined in section 1172.6. The court addressed the resentencing petition pursuant to section 1172.6, but continued to caption the matter as a petition for a writ of habeas corpus. In his notice of appeal, petitioner stated he was appealing from "denial of SB1437/PC1170.95 petition."

In a noncapital case, a habeas petitioner cannot appeal from an order denying relief, but rather must file a new petition in a higher court. (§ 1506; *In re Reed* (1983) 33 Cal.3d 914, 918, fn. 2, overruled on another ground in *In re Alva* (2004) 33 Cal.4th 254, 264; *In re Hochberg* (1970) 2 Cal.3d 870, 875, disapproved on another ground in *In re Fields* (1990) 51 Cal.3d 1063, 1070, fn. 3; cf. § 1509.1; *Briggs v. Brown* (2017) 3 Cal.5th 808, 825.) However, an order granting or denying relief pursuant to section 1172.6 is appealable, pursuant to section 1237, subdivision (b), as an order after judgment affecting a party's substantial rights. (See *People v. Heard* (2022) 83 Cal.App.5th 608, 622, fn. 12.)

Regardless of how the matter is titled, petitioner's claims are reviewable by us on the merits. The People do not contend otherwise but rather concede that the petition was "in effect" a petition for resentencing under section 1172.6. However, because the instant appeal is from an order styled as an order denying a petition for writ of habeas corpus, we maintain the single title format applicable to habeas corpus proceedings. (Cal. Style Manual (4th ed. 2000) § 6:32.)

at least a major participant in the underlying felony and acted with reckless indifference to human life (§ 190.2, subds. (a)(17), (d)), do not preclude relief because they were made prior to our Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

In our original opinion we held the jury's special circumstance findings rendered petitioner ineligible for resentencing as a matter of law. Accordingly, we held any error in failing to appoint counsel or otherwise follow the procedures set out in former section 1170.95, subdivision (c) was harmless. We therefore affirmed the superior court's denial of the petition. (*In re Coles* (June 16, 2021, F079172) [nonpub. opn.].)

Petitioner petitioned the California Supreme Court for review (S269973). The state high court granted review and ultimately transferred the matter to us with directions to vacate our opinion and reconsider the cause in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). Pursuant to the California Supreme Court's order, we vacated our prior opinion. We also advised the parties of our intention to reverse and remand this matter with directions to issue an order to show cause, in light of the holding in *Strong*. Petitioner filed a brief stating his agreement with the proposed disposition. The People filed no response.

In light of *Strong*, we will reverse the superior court's order denying the petitions and remand with directions for the court to appoint counsel to represent petitioner and to issue an order to show cause.

## FACTUAL AND PROCEDURAL HISTORY

On March 22, 2000, a jury convicted petitioner of first degree murder (§ 187; count 1), with the special circumstances that the murder was committed during the commission of a robbery, kidnapping, and carjacking (§ 190.2, subd. (a)(17)(A), (B), (L)); kidnapping for robbery (§ 209, subd. (b); count 2); carjacking (§ 215; count 3) and

3.

robbery (§ 211; count 4).[2]  On count 1, the court sentenced petitioner to a term of life without the possibility of parole.  Sentence on the remaining counts was imposed and stayed pursuant to section 654.

## A.  Direct Appeal[3]

In petitioner's direct appeal, we summarized the trial evidence as follows:

"*I.    Prosecution Evidence*

"On the night of December 4, 1997, a California Highway Patrol officer stopped David Parker for driving 90 miles an hour on Highway 99 near Atwater.  Since he was driving a rented car on a suspended license and the renter was not in the car, officers impounded the car and gave him, his passengers, and their luggage a ride to a restaurant with a pay phone in the parking lot and a hotel across the street.  His passengers were [petitioner] and three female juveniles, Nailah W. (Nailah) (who later pled guilty in juvenile court to accessory to murder) and Janelle G. (Janelle) and Myan J. (Myan) (both of whom later pled guilty in juvenile court to first degree murder).

"A long-time friend of [the victim, Nathaniel Thompson] saw him and his van in the parking lot of the restaurant at that time.  Nailah heard [petitioner] and Parker talk about needing a ride.  Myan asked Thompson for a ride.  [Petitioner], Parker, Nailah, Janelle, and Myan all got into Thompson's van with their luggage.  As Thompson drove, Nailah heard [petitioner] and Parker whispering to each other that they had to 'get the man's van and ditch him somewhere.'

"After driving for a while, Thompson got off the freeway, stopped by a pay phone, opened the sliding side door, and helped everyone take the luggage out of the van.  While he was doing that, someone 'knocked [him] out' by hitting him in the head.  He fell halfway inside and halfway outside the van.  Parker said, 'Shit, I busted my fist.'

---

[2] The same jury found petitioner's codefendant, David Parker, guilty of the same offenses.  Parker is not a party to this appeal.

[3] We previously took judicial notice of our nonpublished opinion in petitioner's direct appeal.  We quote from that opinion to provide context for the trial court's ruling.  However, our holding does not rely on the facts summarized in our prior opinion.  (See § 1172.6, subd. (d)(3).)

"[Petitioner] and Parker put Thompson into the van. [Petitioner] sat down on top of him and pressed his knee into his back. Myan helped hold him down. As Parker drove, Thompson came to and pleaded for them to let him go. 'He said you can take my car or my van and my keys, money and keys, just let me go.' Parker drove onto a side road and stopped the van.

"[Petitioner] and Parker dragged Thompson out of the van and beat and kicked him as he lay on the ground. [Petitioner] or Janelle smothered him with a pillow. [Petitioner] poured kerosene from a lantern onto his body. Myan struck a match to the kerosene and set his body on fire. A passerby found his burned body the next morning.

"Parker drove to Las Vegas, where the van was abandoned after Thompson's possessions were removed and the van was wiped down for fingerprints. Police who questioned Nailah on suspicion of prostitution later that month learned of the murder and found the van after taking statements first from her and then from [petitioner]. Police found Janelle's fingerprint on a window of the van. Inside [petitioner's] car, police found Thompson's cell phone and [petitioner's] and Parker's fingerprints.

"Other property missing from Thompson's body and van were credit cards and a gold chain. The cause of death was blunt force injury to the right side of the head and brain. The fatal skull fracture that caused the brain to hemorrhage was consistent with kicking the head, not with hitting the head with a fist. The second degree burns on the body were not a cause of death, as the burning occurred at the time of or after death.

"*II. Defense Evidence*

"When [petitioner] talked with Parker about stealing a car, he meant taking a car with a screwdriver as he did in his youth, not carjacking anyone. He was surprised when Parker hit Thompson in the head. Physically he could have walked away, but once people 'back home' found out about that he would have been in 'a lot of trouble.' He had a good idea he and Parker were going to keep the van. He helped Parker push Thompson back into the van and held him down while Parker drove.

"After Parker drove onto a side road and stopped the van, Thompson kicked [petitioner], who got upset and kicked him back four or five times. He kicked him in the chest but not in the head. Janelle and Myan kicked him, put a pillow on his face, and held him down until he stopped moving. He did not recall who got the lantern or who poured kerosene on him. He was surprised at 'everything that was going on.' " (*People v. Coles* (Feb. 21, 2002, F035860) [nonpub. opn.] (*Coles*).)

5.

In our discussion of the issues on appeal, we summarized additional testimony as follows:

"At trial, Janelle testified she and Myan stayed inside the van while, outside the van, [petitioner] and Parker hit and kicked Thompson, whom [petitioner] smothered with a pillow. Myan testified neither she nor Janelle beat Thompson. After pleading guilty in juvenile court to accessory to murder, Nailah testified at trial that she watched Janelle and Myan kick Thompson, Myan take his gold chain from him, Janelle smother him with a pillow, and Myan light him on fire." (*Coles*, *supra*, F035860.)

We continued:

"Nailah testified that after [petitioner] and Parker planned to 'get the man's van and ditch him somewhere' [petitioner] and Parker beat Thompson and stole his van and [petitioner] poured kerosene from a lantern onto his body. [Petitioner] testified he did not douse his body but admitted kicking him, helping to put him back into the van, and holding him down while Parker drove and Thompson begged to be let go. [Petitioner] testified he had a 'pretty good idea' they were going to keep the van and drive to Las Vegas, where police found the van with Janelle's fingerprint on one of the windows and [petitioner's] car with Thompson's cell phone and [petitioner's] and Parker's fingerprints inside." (*Coles*, *supra*, F035860.)

We further explained:

"Evidence in the record supported the theory of an accomplice causing Thompson's death by an act in furtherance of the common design. Nailah testified she heard [petitioner] and Parker whispering to each other while riding in Thompson's van that 'they had to get the car.' Both she and [petitioner] testified that [petitioner] and Parker beat Thompson and stole his van. Naliah [*sic*] testified she saw Myan kick and rob Thompson and saw Janelle kick him and smother him with a pillow. On the basis of that evidence, CALJIC No. 8.26 [concerning first degree felony murder in pursuance of a conspiracy] properly permitted the jury to find [petitioner] guilty of murder." (*Coles*, *supra*, F035860.)

Ultimately, this court amended petitioner's sentence on counts 2 and 3, but otherwise affirmed the judgment. (*Coles*, *supra*, F035860.)

6.

**B.     Resentencing Petition**

On January 7, 2019, petitioner filed a petition for writ of habeas corpus seeking resentencing pursuant to section 1172.6.  Therein, petitioner stated that an information was filed against him that allowed him to be prosecuted under both a theory of felony murder and murder under the natural and probable consequences doctrine; he was convicted of first degree murder at trial; and he was not the actual killer, did not act with an intent to kill, and was not a major participant in the underlying felony or did not act with reckless indifference to human life in the course of the crime.  He requested counsel be appointed to represent him.  He attached as an exhibit a portion of this court's opinion in *Coles*, *supra*, F035860.[4]

On February 19, 2019, the People filed a letter brief opposing the petition, arguing petitioner was ineligible for resentencing because he acted with the intent to kill and was a major participant who acted with reckless indifference to human life, as evidenced by the jury's special circumstance findings.  As an exhibit to their letter brief, the People filed this court's entire opinion in *Coles*, *supra*, F035860.

On March 1, 2019, the court summarily denied the petition.  The court summarized the factual background from our opinion in *Coles*, *supra*, F035860, and stated:

> "The record is clear.  Petitioner was the actual killer.  In the alternative, he either, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of the murder in the first degree, or he was major participant who acted with reckless indifference to human life.
>
> "Accordingly, the petition is **DENIED**."

---

[4] In a letter sent to the trial court on February 18, 2019, petitioner requested various transcripts from his criminal trial.  However, it appears this letter was returned to petitioner for lacking a superior court case number.  A copy of the letter nonetheless was included in the record on appeal in the instant case.

On April 4, 2019, petitioner filed a letter brief reply, in which he continued to assert his eligibility for resentencing.

On April 5, 2019, the court responded to petitioner's reply brief stating:

> "The court is in receipt of petitioner's reply brief in his motion pursuant to Penal Code section [1172.6]. The court will note it also received a brief from the District Attorney, which was served on petitioner. Without reviewing the District Attorney's brief, the court summarily denied petitioner's motion on March 1, 2019. The denial is based solely on the record, which conclusively demonstrates a lack of a prima facie case. As such, the court will file petitioner's reply brief for record keeping but the ruling denying the motion remains in full effect."

This timely appeal followed.

## DISCUSSION

### I.    Applicable Law

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see § 189, subd. (e); accord, *Strong*, *supra*, 13 Cal.5th at pp. 707-708.) Senate Bill No. 1437 also added former section 1170.95, now renumbered as section 1172.6, which provides a procedure for persons convicted of felony murder to seek vacatur of the conviction and resentencing. (§ 1172.6, subd. (a); accord, *Strong*, at p. 708.)

Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)-(c); accord, *Strong*, *supra*, 13 Cal.5th at p. 708.) If the sentencing court determines the petitioner has made such a showing, the court must issue an order to show cause and hold

8.

a hearing to determine whether to vacate the murder conviction. (§ 1172.6, subds. (c), (d)(1).) At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

To demonstrate prejudice from the denial of a section 1172.6 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*People v. Lewis* (2021) 11 Cal.5th 952, 972-974 (*Lewis*); see *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## II. Appointment of Counsel

Petitioner contends the trial court erred by summarily denying his facially sufficient petition without appointing counsel and permitting further briefing.

At the time the trial court ruled on the petition, our Supreme Court had not resolved whether section 1172.6 requires the appointment of counsel or further briefing immediately upon the filing of a facially sufficient petition. (See *Lewis*, *supra*, 11 Cal.5th at pp. 961-967.) However, our Supreme Court and Legislature have since clarified that counsel must be appointed if requested, and briefing must proceed, so long as the petition complies with the requirements of section 1172.6, subdivision (b)(1) and (2). (§ 1172.6, subd. (b)(3); accord, *Lewis*, at pp. 962-963, 967.) Here, the People do not suggest the petition failed to meet the requirements of section 1172.6, subdivision (b). Accordingly, appointment of counsel and a full opportunity for briefing were required by section 1172.6, subdivisions (b)(3) and (c). (See *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.) The court erred in disposing of the petition without following these procedures.

## III. Prejudice

Because the trial court erred in failing to appoint counsel or permit further briefing, we may affirm only if petitioner was not prejudiced by the error. (*Lewis*, *supra*,

11 Cal.5th at pp. 972-974.)  Because the record does not establish petitioner is ineligible for resentencing as a matter of law, we cannot conclude the court's error in failing to appoint counsel was harmless.

While this appeal was pending, our Supreme Court issued its opinion in *Strong*, *supra*, 13 Cal.5th 698.  Therein, the high court held that a special circumstance finding entered pursuant to section 190.2, subdivision (a)(17) prior to the court's decisions in *Clark*, *supra*, 63 Cal.4th 522 and *Banks*, *supra*, 61 Cal.4th 788 did not preclude a section 1172.6 petitioner from making a prima facie showing of eligibility for relief.[5]  (*Strong*, at p. 703.)  In light of *Strong*, the special circumstance findings in the instant case are not preclusive on prima facie review of the petition under section 1172.6.  (*Strong*, at p. 703.)

The People also argue our opinion in petitioner's direct appeal "confirms" petitioner is ineligible for relief.  The People cite to facts summarized in that opinion to argue "the opinion sufficiently supports the trial court's denial of the petition."  However, the factual summary in an appellate opinion is not evidence that may establish a petitioner's ineligibility for resentencing as a matter of law.  (§ 1172.6, subd. (d)(3); *People v. Flores* (2022) 76 Cal.App.5th 974, 987-988; accord, *Lewis*, *supra*, 11 Cal.5th at p. 972 [" 'an appellate opinion might not supply all answers' "].)  Moreover, a petition may not be denied simply because substantial evidence supports a conclusion the petitioner was convicted under a valid theory.  (See § 1172.6, subd. (d)(3); *Lewis*, at p. 966 [prima facie determination is a question of law].)

In sum, the petition was facially sufficient and alleged the essential facts necessary for relief under section 1172.6.  Because the People have presented no other basis to deny the petition at the prima facie stage, the order denying the petition must be reversed and the matter remanded with directions to appoint counsel, issue an order to show cause and,

---

[5] *Banks* and *Clark* "substantially clarified the law" regarding "what it means to be a major participant and . . . to act with reckless indifference to human life." (*Strong*, *supra*, 13 Cal.5th at pp. 706-707.)

to the extent necessary, conduct an evidentiary hearing under subdivision (d) of section 1172.6. We express no opinion on the ultimate resolution of the petition.

## **<u>DISPOSITION</u>**

The March 1, 2019 order denying the petition is reversed and the matter remanded with directions to appoint counsel, issue an order to show cause and, to the extent necessary, hold an evidentiary hearing pursuant to section 1172.6, subdivision (d).